MANUEL FIGUEROA ET AL., Plaintiffs and Appellees, *v.* TULIO
F. LÓPEZ, MAYOR OF THE MUNICIPALITY OF BAYAMÓN,
Defendant and Appellant.

No. R-62-154.     Decided November 29, 1963.

*Armando A. Miranda* and *Pablo J. Santiago Lavandero* for appellant. *Mario A. Rodríguez* and *Luis A. Archilla Laugier* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In *Bezares v. González, Mayor,* 84 P.R.R. 450 (1962), in considering the pertinent provisions of the new Municipal Law of 1960, Act No. 142 of July 21, 1960 (Sess. Laws, p. 505), in force since January 9, 1961, for the appointment and removal of municipal employees, we said that the

question was not properly a determination on the permanent character of the employees, that "it is not a problem of incumbency but of removal," and further added that in this respect the law did not leave any room for doubt as to the procedure to be followed. Consequently, we held that the employees appointed by a former administration could not be removed by the mayor elected in the recent elections upon entering in the discharge of his administrative duties, except for just cause, upon preferment of charges and a hearing before a committee of three persons appointed by the mayor with the advice and consent of the municipal assembly, pursuant to § 93 of the Act *supra*, 21 L.P.R.A. § 1553. In the elaborate opinion rendered in that appeal a historical summary was made of the legislation on this matter since 1902 up to the present time, as well as of the bill which finally became Act No. 142 of 1960. We will therefore refer to it as the necessary basis for the consideration of the legal problem involved in this appeal.

Appellant Tulio F. López was elected mayor of Bayamón in the general elections held in November 1960. He qualified on January 9, 1961, and during the first month of his tenure he removed from their employments Manuel Figueroa, Elsie Rodríguez, Roque Berríos, Aurora Roque, Basilisa Ríos, and Manuel Rodríguez Matías, appellees herein, who held respectively the offices of accounting clerk, chief clerk, assistant collector or second collector of revenues, second typist, chief clerk, and recreation leader. No charges were preferred nor a hearing held. In order to justify his actions, appellant alleged as reasons the inefficiency in the work, the need for economy, and the elimination of the office by virtue of the creation of the new office of Finance Director. The employees in question resorted to the Superior Court by means of petitions for mandamus to order appellant to reinstate them in their offices. The petitions were submitted on a stipulation on certain facts to which we

shall have occasion to refer hereinafter. The trial court granted the petition on the basis of its interpretation to the effect that in *Bezares* we held that § 93 "is applicable to provisional as well as to permanent employees."

1. A careful reading of our opinion in *Bezares* reveals that its *ratio decidendi* was not whether or not the present Municipal Law confers permanency to the municipal employees. We pointed out essentially that the question was not a problem of incumbency but of removal. We further held that the term of the employees—unlike the situation with respect to the officers—did not expire *ipso jure* with the election and establishment of a new administration, and that the holding in that sense under former legislation which we made in *Belaval* v. *Todd*, 22 P.R.R. 590 (1915), and 24. P.R.R. 24 (1916), and in *De Castro* v. *Board of Commissioners*, 59 P.R.R. 673 (1942), was applicable. We now confront other issues which, although for the purpose of discussion should part from the rules announced in *Bezares*, were not involved at that time in the facts which we considered there.[1] Let us see.

The evidence reveals that appellees Manuel Figueroa and Basilisa Ríos were "temporary employees according to their appointments," as it appears from the stipulation on which the cases were submitted.[2] It appears that Figueroa received

---

[1] Although in the answer formulated in the petition of *Basilio Domínguez et al.* v. *Hilda Pacheco de Algarín*, Review 535, decided by the opinion rendered in *Bezares*, it was alleged that some of the petitioners had been appointed with "temporary character," this question was not elaborated on at all nor was it insisted on or explained of what such character consisted. It was not necessary to consider it in order to dispose of that case.

[2] Appellee Elsie Rodríguez was removed from the municipal service on January 23, 1961, and although in the letter to that effect written to her it is said that she was discharging the office with probationary character, an examination of the original record shows that her appointment of September 16, 1960, was subject to a probationary period of

an appointment on August 2, 1960, signed by the former mayoress, María V. Umpierre, to discharge the office of accounting clerk "subject to a probationary period . . . until February 2, 1961."[3] In the petition filed by Basilisa Ríos it was not alleged, unlike the other five cases, that she was a permanent employee. The answer alleges as a defense that she held the office on a probationary basis, and it is so inferred from the letter of removal which the mayor wrote to her making reference to the office which "she has been discharging with probationary character." Both were removed before the expiration of the six months' probationary period.

Ordinance No. 11 of series 1959–60, approved August 12, 1959, established a merit system for the administration of personnel in the Municipality of Bayamón which classified the employees into permanent, probationary, and provisional or temporary. Section 5 provided that the employees who on the effective date held offices included in the classified service[4] would become permanent if they had completed, or when they completed, a period of not less than six months of satisfactory services, as certified by the mayor. As to these employees in the classified service, § 17 as well as § 93

---

three months which expired on the following December 16, since three months which she had worked in the same office of chief clerk had been credited to her. Therefore, the probationary period had expired by the date of her removal.

[3] On the probationary character of the appointment of Figueroa, there is no serious question since that employee wrote a letter to appellant on January 30, 1961, making reference to the fact that his "probationary period" as accounting clerk would expire on February 2, and requesting his permanent appointment.

[4] The classified service included all the employees not comprised in the exempt service, which was composed of (1) the officers elect; (2) the administrative officers whose offices were created by law; (3) the members of boards, commissions, committees and councils who hold office ad honorem; (4) the persons employed to render technical, professional or advisory services; (5) the voluntary personnel who did not receive compensation from the municipality; and (6) the patients in municipal hospitals and those confined in penal or charity institutions who are used in the service of those institutions.

of the Municipal Law provided that they could only be removed for just cause and upon preferment of charges; and § 19 provided a procedure for appealing to the assembly which, we have seen, is substantiated at present before a committee of three persons especially designated for that purpose. Section 8 provided that "The persons selected by competitive tests to hold offices in the Classified Service shall become permanent employees if in the opinion of the Mayor their services have been satisfactory. During the probationary period or at the end thereof the Mayor may remove any employee for inefficiency or incompetency, in which case notice of the reason for his removal shall be served upon the employee." No provision is made for the preferment of charges and holding of a hearing.

This ordinance was approved for the purpose of including the employees of the Municipality of Bayamón in the Retirement System of the Employees of the Government of Puerto Rico and its instrumentalities, pursuant to Act No. 2 of April 22, 1959 (Sess. Laws, p. 4), which amended the title and §§ 1, 3, 5, and 22 of Act No. 447 of May 15, 1951, 3 L.P.R.A. §§ 761, 763, 765 and 782. The amendment to § 22 expressly provided, *inter alia*, "As to the municipalities, the Board shall require that they have established a merit system based on certain essential principles previously agreed upon by the Director of Personnel before participating in the System."[5]

■ Is there any incompatibility between the municipal merit system established pursuant to § 22 of the Retirement Act, as amended by Act No. 2 of 1959, and the provisions of § 93 of the Municipal Law of 1960? We think not. Both

---

[5] The report of the Municipal Government and Elections and Personnel Committees of the House of Representatives on H.B. 326 which afterwards became Act No. 2 of April 22, 1959, appears in X-5 Journal of Proceedings 2233 (1958); that of the Elections and Personnel Senate Committee in XII-1 Journal of Proceedings 404 (1959). See Opinion No. 75 of 1960 of the Secretary of Justice, vol. XXXI, p. 360.

provisions may coexist, since they are but manifestations within the same sphere of action. On the one hand, they preserve the standards of efficiency in the public administration which are achieved through a merit system which, among other things, affords the opportunity, upon establishing the category of probationary employees, to evaluate the aptitude, the satisfactory performance of the duties of the office and the habits and dependability of those who will afterwards become permanent employees, and, on the other hand, it sanctions in favor of those who have shown aptitude and efficiency that they shall be removed only through a procedure which will give them an opportunity to confront the charges preferred and of hearing them publicly. We therefore hold that in those municipalities which have optionally established a merit system for their personnel, the employees referred to in § 93 providing for a specific procedure for removal, are the regular employees permanently appointed in the classified service. *Cf.* § 21 of Act No. 345 of May 12, 1947, as amended by Act No. 21 of May 28, 1958, 3 L.P.R.A. § 661. This being so, the probationary employees had no right to demand that the procedure prescribed in that section be followed in removing them from the municipal service. *Cf. Rodríguez* v. *Buscaglia, Treas.*, 63 P.R.R. 470 (1944) ; *García* v. *Cordero, Mgr.*, 62 P.R.R. 299 (1943) ; *Sárraga* v. *Treasurer of P.R. et al.*, 56 P.R.R. 855 (1940).

The foregoing would be sufficient to reverse the judgments rendered by the trial court in the appeals of Manuel Figueroa and Basilisa Ríos, but since in the course of the hearing there arose certain questions of fact which call for further clarification, we will merely set them aside and remand the cases for reception of evidence on whether, considering the service record of those employees, they were actually probationary employees, since as we stated in *Cassasús* v. *Escambrón Beach Hotel*, 86 P.R.R. 356 (1962), in referring to an employee of like category for the pur-

pose of deciding whether he was entitled to compensation for unjustified removal, "the mere labelling in that sense is not controlling; it shall all depend on the circumstances as a whole."

■ 2. As to the other four appellees, there is no controversy on the regular character in which they discharged their offices, and that, in the absence of preferment of charges and holding of the hearing required by § 93 and § 17 of the ordinance in question, their reinstatement should have been ordered, considering particularly that in the stipulation on which the cases were submitted it was set forth that "there was an appropriation in the current budget for payment of the offices of the petitioning employees".[6] There is no question, therefore, that their reinstatement or payment of emoluments for the fiscal year 1960–61 should have been ordered. However, since not only that fiscal year but also 1961–62, 1962–63 and part of 1963–64[7] had elapsed since the removal, and since in the brief for appellant as well as in the hearing before this Court it was alleged that some of the offices held by appellees were subsequently abolished by the Municipal Assembly, the cases will be remanded to the trial court for formulation of proper determinations after the presentation of evidence by the parties. We wish to point out, however, that this abolishment must have been made in good faith. It would not be sufficient to eliminate an office and create another with a different designation, but with the same duties and obligations. *Cantellops* v. *Fernós, Commissioner*, 65 P.R.R. 749 (1945); *Gómez* v.

---

[6] It seems clear that since the offices were created in the budget and there being an appropriation for payment of the corresponding salaries, the mayor could not remove for reasons of economy without the consent of the Municipal Assembly. See §§ 55 and 61 of Act No. 142 of 1960, 21 L.P.R.A. §§ 1354 and 1360.

[7] The hearing of these appeals before this Court was held on November 5, 1963, when they were submitted.

*Negrón,* 65 P.R.R. 286 (1945); *Cruz* v. *Buscaglia, Treas.,* 61 P.R.R. 713 (1943); *Rosario* v. *Cuevas, Commissioner,* 60 P.R.R. 457 (1942); *Géigel* v. *Rivera, Commissioner,* 48 P.R.R. 120 (1935); *Romero* v. *Gore, Governor,* 46 P.R.R. 394 (1934); *cf. Santiago* v. *Fernós, Commissioner,* 70 P.R.R. 696 (1949).

The judgments rendered by the Superior Court, Bayamón Part, on May 7, 1962, will be set aside and the cases remanded for further proceedings consistent with this opinion.